UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

MARTIN WALSH,

       Plaintiff,

v.

LIEUTENANT JASON LUNSFORD, NEW
YORK CITY POLICE OFFICER MICHAEL
CLARK, and NEW YORK CITY POLICE
SERGEANT CATHERINE ROACH

       Defendants.

------------------------------------------------------------ X

**OPINION AND ORDER
DENYING DEFENDANTS'
POST-TRIAL MOTION**

14 Civ. 7108 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

  Defendants Michael Clark and Catherine Roach move to vacate the jury's verdict and ask the Court to grant, alternatively, judgment as a matter of law or a new trial. Fed. R. Civ. P. 50(b); 59(a). They contend that the evidence does not support the verdict of $225,000 compensatory damages and $100,000 punitive damages, for falsely arresting plaintiff Martin Walsh and causing him to be maliciously prosecuted. They contend also that the verdict is inconsistent with the jury's finding that defendant Jason Lunsford is not liable to plaintiff.

  The motion is denied. The evidence amply supports the verdict against Roach and Clark; the jury was properly instructed; and there were no evidentiary errors in the court's rulings.

## THE EVIDENCE

  Defendants Lunsford, Clark and Roach were all working as law enforcement officers for the New York Police Department on the night of the incident. Plaintiff Martin Walsh

is a senior court clerk in New York State Criminal Court and a peace officer, authorized to make arrests for crimes committed within his presence, whether on or off duty. Walsh also worked during off-duty hours as an armed security guard for Ambassador Protection Services. Tr. 57-59.

On New Year's Eve, December 31, 2013, Walsh was working as a security guard at the Hilton Hotel located at Sixth Avenue and 54th Street in Manhattan. He was posted in front of an "exit only" door to prevent pedestrians from entering the Hilton through that door. Tr. 61-62. The purpose of establishing this exit only door on New Year's Eve was to prevent non-guest pedestrians from cutting through the hotel in attempt to get closer to Times Square. Tr. 41, 60.

At approximately 6:15 p.m., David Vadala approached Walsh at a "jogging" pace and attempted to push his away past Walsh and into the hotel, exclaiming, "I gotta get in here." Tr. 62. Vadala grabbed Walsh by the lapels of his coat and shoved him into the exit door, trying to get past Walsh. Tr. 62-63. Walsh then punched Vadala in the face to free himself and sought to arrest him. Tr. 65. The two tumbled to the ground, and other security guards and nearby police officers came to the scene. Vadala "resisted violently," and it took the effort of several officers to subdue Vadala and place him in handcuffs. Tr. 66-67. During the struggle, Vadala yelled, "I'm retired, I'm retired," which Walsh interpreted to mean that Vadala was a retired police officer. Tr. 67.

After Vadala was restrained, defendant Lieutenant Jason Lunsford, an officer on the scene, spoke with Walsh. Lunsford was from the 75th precinct in Brooklyn, but was assigned to midtown Manhattan to provide extra security on New Year's Eve. Walsh told Lunsford that he had arrested Vadala in his capacity as a peace officer. Tr. 68. Lunsford responded that the police would handle the arrest, and instructed Walsh, as the complainant, to

go to the nearby 18th precinct, and file a complaint against Vadala. Tr. 69. Lunsford took Walsh's ID as a precaution, and Walsh voluntarily walked to the 18th precinct, unescorted. Tr. 71. Vadala, by contrast, was handcuffed, transported to the 18th precinct in a police car, and placed in a holding cell or interrogation room. Tr. 68, 72, 240.

Walsh testified that when he arrived at the 18th precinct to file a complaint against Vadala, he was told to wait in a room. After some time, defendant Officer Michael Clark entered the room, leaned over the edge of a desk, pointed at Walsh, and stated, "I don't know if you know how things work in the police department, but you gotta shit-can this job." Tr. 74. Walsh responded, "I can't do that," and Clark "stormed" out of the room. Tr. 75.

A few minutes later, Sergeant Catherine Roach, the desk sergeant in charge of the 18th precinct that night and Officer Clark's superior, entered the room and asked Walsh what had happened. Walsh told her and said that he had come to the precinct to file a complaint against Vadala. Roach responded, "OK, we'll see about that," and walked out of the room. Tr. 76. A few minutes later, Roach returned with Lunsford, who had arrived at the precinct. Walsh again explained what had happened, and asked if he needed a lawyer. Roach responded, "Well, if that's the route you are going to go, we're going to have to go farther with this." Tr. 77. Roach and Lunsford then left the room. After more time had passed, Roach returned and asked Walsh, "Well, are you going to drop the charges?" Tr. 80. After Walsh again stated he would not do that, Roach responded, "All right. Turn around. Put your hands behind your back. You're under arrest," and handcuffed Walsh. *Id.* Roach instructed Officer Jhonny Milfort, a novice officer who was assigned to the 18th precinct on temporary duty that night, to swear out the complaint against Walsh charging him with assault. Tr. 212-213. Walsh spent the night in jail, and was arraigned the following day. Tr. 111-12.

3

Throughout that evening, Roach and Clark interacted with Vadala as well. Tr. 232, 292. When Vadala was first brought into the precinct, Clark recognized Vadala because they served together at the 18th precinct in the early 1990s. Tr. 285. Clark and Vadala spoke three times that evening, and Roach estimated that she spoke with Vadala for about an hour. Tr. 249, 336. They asked Vadala if he wanted to press charges against Walsh, to enable them to make a joint offer to both under which they would drop their complaints against each other and accept a summons for a violation in lieu of arrest and detention. Tr. 236-37, 277-78, 328-29, 333-34. Walsh made it clear he was not interested in such a deal, and Roach and Clark arrested both Walsh and Vadala for assaulting each other. Clark told Vadala, "I'm sorry, it's going through." Tr. 336.

Lunsford arrived at the 18th precinct after Walsh had arrived. Lunsford testified that he briefed Roach about the incident between Walsh and Vadala, but did not recall speaking with Clark. Tr. 162-63. Lunsford again spoke with Walsh and then with Vadala, but did not recall any details other than Vadala's complaint that Walsh had assaulted him. Tr. 164, 167. Lunsford testified that he offered a criminal summons to both Walsh and Vadala. Tr. 173. This testimony was in tension with the testimony of Clark, who stated that he and Roach were the ones who offered the deal to Walsh and Vadala, not Lunsford. Tr. 334. Lunsford left the precinct after Walsh rejected the offer and was placed under arrest.

## DISCUSSION

### I. Roach and Clark's Motion for Judgment as a Matter of Law is Denied

#### a. Legal Standard

The burden on a party seeking judgment as a matter of law "is particularly heavy after the jury has deliberated in the case and actually returned its verdict." *Cross v. N.Y. City Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005). "In deciding such a motion, the court must give

deference to all credibility determinations and reasonable inferences of the jury, and it may not itself weigh the credibility of witnesses or consider the weight of the evidence." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998) (citation omitted). Consequently, a Rule 50 motion may not be granted unless "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]. *Williams v Cty. of Westchester*, 171 F.3d 98, 101 (2d Cir. 1999) (citation omitted).

### b. False Arrest

To prevail on a claim for false arrest under New York law, the plaintiff must show "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (N.Y. 1975)).[1] "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation marks and citation omitted). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jenkins v. City of N.Y.*, 478 F.3d 76, 84–85 (2d Cir. 2007).

---

[1] The elements of a claim of false arrest pursuant to 42 U.S.C. § 1983 are "substantially the same as the elements of a false arrest claim under New York law." *Hygh v Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992) (internal quotation marks omitted).

5

Roach and Clark argue that they had probable cause to arrest Walsh as a matter of law because Vadala told them that Walsh had punched him during the altercation at the Hilton Hotel, and because Vadala had bruise marks on his face. Tr. 232, 287; *see Wahhab v. City of N.Y.*, 386 F. Supp. 2d 277, 287 (S.D.N.Y. 2005) ("Probable cause will generally be found to exist when an officer is advised of a crime by a victim or an eyewitness."); *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness.") (citation omitted).

This simplistic and selective description of the circumstances surrounding Walsh's arrest fails to account for the credible facts known or reasonably available to Roach and Clark at the time they made the arrest, and ignores the material inconsistencies in their testimony.

From Walsh's testimony, which the jury by its verdict found credible, the jury reasonably found that Roach and Clark arrested Walsh because he refused to drop his complaint against Vadala, their former colleague. By any standard, this is not a good faith basis for arresting someone, and does not constitute probable cause. Roach and Clark argue that an officer's subjective motivation for making an arrest is irrelevant in assessing probable cause. It is true that "the standard for probable cause is an objective one, and does not depend upon an officer's subjective motivations." *Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 66 (E.D.N.Y. 2015). But Roach and Clark's reliance on this principle is circular, for it presumes the existence of probable cause. Absent an objective basis for a finding of probable cause, an officer may not arrest someone in bad faith, and then shield himself from any inquiry into his motivation for the arrest. *See United States v. McDermott*, 918 F.2d 319, 325 (2d Cir. 1990) ("[W]hen police

officers acting in bad faith make an arrest without probable cause, the person arrested has suffered a deprivation of liberty without due process of law.").

The jury by its verdict found that Roach and Clark failed to consider facts reasonably available to them that were critical to the question of probable cause. The jury was instructed, without objection, that "probable cause exists when the facts and circumstances known to an arresting officer, or readily available to the arresting officer, taken together are of such weight and persuasiveness as to convince an officer of ordinary intelligence, judgment and experience, that it is reasonably likely that the person arrested committed a crime." Tr. 468; *see also Mejia v. City of N.Y.*, 119 F. Supp. 2d 232, 253 (E.D.N.Y. 2000) ("Since the law seeks to protect citizens against unlawful arrest, the determination of whether probable cause existed must be made on the basis of the information possessed or reasonably available to the defendant at the time of the arrest."). "Courts evaluating probable cause for an arrest must consider those facts available to the officer at the time of the arrest and immediately before it." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996). Although an arresting officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997), "under some circumstances, a police officer's awareness of the facts supporting a defense can eliminate probable cause." *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003).

Roach and Clark knew that Walsh had voluntarily come to the precinct specifically to file a complaint against Vadala, and that Vadala had been brought to the precinct in handcuffs, having been arrested for assault. Tr. 242, 285. Vadala did claim that he had been assaulted by Walsh, but Roach and Clark knew that Walsh had been working as a security guard, that he was a peace officer, and that his use of force was privileged, made in reaction to Vadala's

7

effort to force his way past Walsh into the Hilton. Tr. 280. Significantly, Roach and Clark knew from the outset that Walsh had punched Vadala, but they made no effort to arrest him until he refused to drop his complaint against Vadala. Tr. 80. Based on the evidence before it, the jury reasonably found that Roach and Walsh disregarded information known or reasonably available to them, and therefore lacked probable cause to arrest Walsh.

There were also numerous inconsistencies in Roach's and Clark's testimony. Clark testified that he and Roach discussed whether Vadala should be asked whether he wanted to press charges against Walsh, whereas Roach testified that no such conversation happened. Tr. 261, 327. Clark testified that he had at least three conversations with Walsh and Vadala throughout the evening, whereas Roach testified that Clark played no role whatever. Tr. 261, 336. Roach's testimony regarding her conversations with Vadala also was internally inconsistent. During her deposition, she remembered virtually nothing about what Vadala told her. Tr. 252. But at trial, Roach had a memory; she testified that she remembered "Vadala telling me that he was punched by Mr. Walsh, and he kind of cowered down to defend himself against the punching ... that Mr. Walsh was doing to him." Tr. 232. These inconsistencies provided a basis for the jury to credit Walsh's testimony over that of Roach and Clark.

Roach and Clark also argue that they were permitted to rely on Lunsford's determination that there was probable cause to arrest Walsh. Lunsford testified that after speaking with both Walsh and Vadala at the Hilton, and again at the precinct, he concluded there was probable cause to arrest both. Tr. 160, 171. Roach and Clark argue that "when making a probable cause determination, police officers are entitled to rely on the allegations of fellow police officers." *See Panetta*, 460 F.3d at 395 (citation omitted).

8

Roach and Clark's reliance on this principle is misplaced because the "fellow officer" rule is applicable only where an "officer acts upon the direction of or as a result of communication with a superior or [fellow] officer." *Annunziata v. City of N.Y.*, 2008 WL 2229903, at *3 (S.D.N.Y. May 28, 2008) (citation omitted); *see also United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) (under collective knowledge doctrine, "an arresting officer might not be aware of all the underlying facts that provided probable cause or reasonable suspicion, but may nonetheless act reasonably *in relying on information received by other law enforcement officials*.") (emphasis added). But neither Roach nor Clark ever testified that they relied on a probable cause determination by Lunsford, or on any information that Lunsford provided to them. Roach testified that she came to the decision to arrest Walsh "independently," and only "ran it past" Lunsford. Tr. 234, 237. When asked if she and Lunsford collaborated on the decision to arrest Walsh, she said "no." Tr. 263. As to Clark, Lunsford testified that he had no recollection of speaking to Clark that evening, and Clark gave no indication that he relied on information provided by Lunsford. Tr. 163, 332.

Absent evidence suggesting that Roach and Clark actually relied on Lunsford's probable cause determination, or on information he supplied, they cannot invoke the fellow officer rule. *See Charles v. City of N.Y.*, 2014 WL 1284975, at *7 (S.D.N.Y. Mar. 31, 2014) (rejecting defendant officers' invocation of the fellow officer rule where it was a question of fact whether arresting officers actually relied on fellow officer's statements before making arrest).

There was also sufficient evidence for the jury to conclude that Lunsford simply wasn't involved in Roach and Clark's scheme to pressure Walsh into dropping his complaint. Lunsford did testify that he offered both Vadala and Walsh a criminal summons, Tr. 173, but this was inconsistent with the testimony of Clark, who stated that when he asked for Lunsford's

9

blessing to make this offer, Lunsford said that "he didn't care, he just wanted it to be over." Tr. 334. Walsh never testified that Lunsford tried to pressure him into dropping the complaint. Based on this evidence, the jury reasonably concluded that there was not a sufficient basis to hold Lunsford liable for Walsh's arrest.

Roach and Clark argue also that the jury's verdict, in favor of Lunsford, but against them, was inconsistent and irreconcilable. *See Lavoie v. Pac. Press & Shear Co., a Div. of Canron Corp.*, 975 F.2d 48, 53 (2d Cir. 1992) ("When the verdicts are not capable of reconciliation ... a new trial may be—but is not always—required."). For the reasons discussed above, there is no merit to this argument. The jury reasonably found that Roach and Clark were liable to Walsh, and that Lunsford was not.

Lastly, Clark argues that he cannot be liable for falsely arresting Walsh because he was not in the room when Walsh was arrested. It is true that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983," *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted), but the jury was presented with sufficient evidence to infer that Clark was personally involved in the decision to arrest Walsh, as much as was Roach. In addition to telling Walsh that he had to "shit-can" his complaint against Vadala, Walsh also testified that after he had been arrested and was placed in a holding cell, Clark approached Walsh, handed Walsh his cell phone, and stated, "Your boss is going to call you in a minute. You'd better do what he says." Tr. 85. Walsh then spoke on the phone with John Kelly, his boss at Ambassador Protective Services, the security company Walsh was working for that evening. When Walsh told his boss, "I didn't do anything wrong, I can't do that," Clark reached into the cell, grabbed the phone from Walsh's hand, and said, "You're

10

done." Tr. 87, 97. It was reasonable for the jury to conclude that Clark played an active role in the decision to arrest Walsh.

### a. Malicious Prosecution

To prevail on a claim for malicious prosecution, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (citation omitted). The jury's verdict is supported by sufficient evidence on each of these elements.

First, Roach and Clark argue that Walsh failed to introduce any evidence showing that they personally took affirmative steps to initiate Walsh's criminal prosecution. However, a "police officer can also initiate a prosecution by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor." *Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014). The jury had a sufficient basis to conclude that Roach and Clark withheld material information: namely, that Walsh had come to the precinct voluntarily in order to file a complaint against Vadala, and that Walsh's use of force, deployed as a security guard responding to Vadala's effort to push his way through the exit door, likely was privileged.

Roach and Clark also seek to shift responsibility to non-party Jhonny Milfort, the officer who formally swore out the criminal complaint against Walsh. "For a police officer to be held responsible for malicious prosecution, however, his role need not be so direct," *Phelps v. City of N.Y.*, 2006 WL 1749528, at *4 (S.D.N.Y. June 27, 2006), and "there is no requirement that an officer have direct contact with the prosecutor." *Maldonado v. City of N.Y.*, 2014 WL 787814, at *6 (S.D.N.Y. Feb. 26, 2014). In *Phelps*, for example, the court reasoned that because

11

the jury could find that statements made by the defendant officers to the complaining officer caused the plaintiff to be arrested, "their actions could be deemed to have initiated the prosecution." 2006 WL 1749528, at *4. That is what the jury found here, that it was not Milfort, but Roach and Clark who instigated Walsh's prosecution, even though they had no direct contact with the prosecutor and did not personally swear out the criminal complaint.

Second, Roach and Clark argue that Walsh failed to introduce sufficient evidence to show that the prosecution was terminated in his favor. However, "[f]or the termination of a proceeding to be in the plaintiff's favor, the plaintiff must merely show a termination of the proceeding that is 'not inconsistent with innocence.'" *Phelps*, 2006 WL 1749528, at *5 (quoting *Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir. 2004)). Walsh testified that after making three court appearances, the district attorney dismissed the case on his own motion. Tr. 113-15. The dismissal was not the result of any compromise or plea on the part of Walsh. From this evidence, the jury reasonably found that the prosecution was terminated in Walsh's favor. *See Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 289 (E.D.N.Y. 2014) (where action "was terminated by abandonment under circumstances not inconsistent with innocence, it is a favorable termination.").

Third, Roach and Clark argue that there was probable cause to prosecute Walsh. The jury disagreed, and there was sufficient evidence for the jury's findings that Roach and Clark lacked probable cause both to arrest Walsh and to initiate the prosecution against him.

Finally, the jury's finding that Roach and Clark acted with actual malice was supported by the evidence. As the jury found, Roach and Clark arrested Walsh and caused him to be prosecuted as a means of protecting Vadala, their former colleague, and thus the "prosecution complained of was undertaken from improper or wrongful motives, or in reckless

disregard of the rights of the plaintiff," *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996), and with actual malice. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997) (a jury may "find that probable cause for the charges against the plaintiffs was lacking, and that finding alone would support an inference of malice.").

### c. Qualified Immunity

Although the "qualified immunity standard gives ample room for mistaken judgments," it does not extend to "those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citation omitted). The jury found that Roach and Clark acted maliciously or wantonly; that is, with "ill-will, spite, or complete disregard of the rights of another," Tr. 482, and awarded Walsh $100,000 in punitive damages. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) (a "jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."). The jury had sufficient evidence to conclude that Roach and Clark "knowingly violate[d] the law," *Hunter*, 502 U.S. at 229, that their decision to arrest and prosecute Walsh was "manifestly unreasonable," *Arrington v. City of N.Y*, 628 F. App'x 46, 49 (2d Cir. 2015) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 572 (2d Cir. 1996)), and that their behavior manifested "reckless or callous indifference to the federally protected rights of others," namely, Walsh.

## II. Roach and Clark's Motion for a New Trial is Denied

Under Rule 59(a), a motion for a new trial may be granted "on all or some of the issues ... for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). A "jury's verdict ... should rarely be disturbed." *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002) (citation omitted). A district court "ordinarily should not grant a new trial unless it is convinced that the jury has reached a

13

seriously erroneous result or that the verdict is a miscarriage of justice." *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988). Because the jury has not reached a "seriously erroneously result" and its verdict is not a "miscarriage of justice," the motion for a new trial is denied.

### a. The Verdict Against Roach and Clark Was Not Against the Clear Weight of the Evidence

A district court is "authorized to order a new trial on the basis that the jury verdict is against the clear weight of the evidence." *Israeli v. Ruiz*, 2015 WL 6437374, at *2 (S.D.N.Y. Oct. 7, 2015). In contrast to a Rule 50 motion, on a Rule 59 motion, "the trial judge may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012). That said, "trial judges must exercise their ability to weigh credibility with caution and great restraint, as a judge should rarely disturb a jury's evaluation of a witness's credibility, and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury." *Id.* (internal quotation marks and citations omitted). The jury found for Walsh against defendants Roach and Clark because it found that they lacked probable cause to arrest Walsh and to cause him to be prosecuted. For the reasons discussed previously, there was sufficient evidence for this verdict, and there is no basis to disturb it by requiring a new trial.

### b. The Court Did Not Improperly Comment on Defendant Roach's Credibility

Roach and Clark complain that the Court's questions to Roach about the inconsistencies between her trial testimony and her deposition testimony unfairly influenced the jury. *See* Tr. 254-56.

14

A "trial court may actively participate and give its own impressions of the evidence or question witnesses, as an aid to the jury, so long as it does not step across the line and become an advocate for one side. ... Because a federal trial judge is not a passive spectator or moderator, he or she retains the undoubted right to express his or her opinion of the facts to the jury; but, if the court argues the case, it must argue it for both sides[.]" *United States v. Filani*, 74 F.3d 378, 385 (2d Cir. 1996). A judge may not, however, "interrogate so zealously as to give the jury an impression of partisanship or foster the notion that the judge believes one version of an event and not another." *Id.* at 386. The Court's questioning of Roach's inconsistencies was no different from its questioning of inconsistencies in Walsh's testimony, *see* Tr. 78, 134, and courts are permitted to challenge witnesses in this manner. *See United States v. Lasher*, 661 F. App'x 25, 27 (2d Cir. 2016) (holding that criminal defendant was not denied a fair trial where district judge admonished defendant for giving unresponsive or evasive answers); *Care Travel Co. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 991 (2d Cir. 1991) (judges have "the duty to see that the facts are clearly presented."). Moreover, the "overriding consideration is whether the judge saw to it that the jury had all the admissible evidence and knew it was free to find the facts as it thought the evidence showed them to be." *Filani*, 74 F.3d at 386. I instructed the jury to consider only the answers of witnesses, and not who asked the question, whether by the Court or by counsel. Specifically, I instructed the jury as follows:

> Only the witness' answer, taken in the context of the question that was asked, is evidence. That applies to me just the same way as it applies to the lawyer. Nothing I've said during this trial – I want to stress it. Nothing I've said during this trial or may say in these instructions should influence you in any way with regard to your job of finding the facts. The fact that I asked a question during the trial – and I asked a few – does not mean that my questions are more important than the lawyers' questions. The answers given to the questions I asked are not more important than the answers given to the questions asked by the lawyers. I have no opinion about the facts in the case. That's your job. I have no opinion about the credibility of any witness. That's your job. To the extent that you think that I had an opinion,

15

disregard it. It's not my job. You should not take any hints from questions that I asked or from the manner in which I asked questions. You are to consider only the answers to the questions asked. It makes no difference who asked the questions. Tr. 490.

The Court's questioning of Roach did not mislead the jury or cause Roach to suffer any prejudice.

### c. The Verdict Sheet Was Not Improper

Roach and Clark argue that the verdict sheet erroneously failed to permit the jury to make separate assessments with respect to punitive damages for each defendant. But there was no basis in the evidence to permit the jury to draw a distinction between Roach and Clark, for they acted as one. Significantly, Roach and Clark were represented by the same lawyer.

Nor did Roach and Clark preserve this argument. Counsel for defendants did request that "damages be separated between the parties." But that comment and objection focused on the verdict sheet for compensatory, not punitive damages, Tr. 396, and defendants' counsel made no objection to the jury instruction regarding punitive damages. An objection to a verdict sheet not made until after the jury delivers its verdict is not preserved. *See* Fed. R. Civ. P. 51.

### d. The Jury Instruction Regarding the Right of Peace Officers to Use Force Was Not Improper

Roach and Clark argue that the jury instruction regarding the right of peace officers to use force was improper. Walsh was working as a security guard on behalf of the Hilton Hotel when the incident with Vadala occurred. Walsh was also a peace officer by virtue of his employment as a court clerk.[2] I instructed the jury that "one of the questions an officer must consider in believing that he had probable cause to arrest is if the person about to be

---

[2] As a peace officer, Walsh had the authority to arrest a person who committed a crime in his presence, whether on or off duty. *See* N.Y. Crim. Proc. Law § 140.25.

16

arrested was privileged in using the force for which he was arrested." Tr. 471. I then instructed that Walsh, as a peace officer, had the "right to use physical force which he reasonably believes is reasonably necessary to effect the arrest or to save himself from harm." *Id.* Regarding Walsh's status as a security guard, I also instructed the jury that "if a person is engaged to protect a property from wrongful entry, that person so engaged may use such physical force as he reasonably believes is reasonable necessary to prevent someone from wrongfully entering that property." *Id.*

Roach and Clark argue that this instruction misled the jury because it suggested that Roach and Clark were obligated to investigate whether Walsh was justified in using force against Vadala. It is true that an arresting officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997), but "[r]easonable avenues of investigation must be pursued [to establish probable cause]," *Oliveira v. Mayer*, 23 F.3d 642, 647 (2d Cir. 1994) (quoting *BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir. 1986)), and "a police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest." *Wu v. City of N.Y.*, 934 F. Supp. 581, 587 (S.D.N.Y. 1996) (quoting *BeVier*, 806 F.2d at 128).

That Walsh was a peace officer and was working as a security guard when the incident with Vadala occurred are undoubtedly relevant "facts that would help clarify the circumstances" leading to Walsh's arrest. Although an arresting officer is not required to investigate every exculpatory defense put forth by a suspect, the officer cannot disregard plain and undisputed facts. Roach and Clark knew that Walsh was a security guard and a peace officer, that he had the right to use reasonable force to prevent Vadala from forcing his way through an exit-only door, and that Walsh had come to the precinct specifically to lodge a

17

criminal complaint against Vadala. The jury had sufficient evidentiary basis to find that Roach and Clark did not consider facts plainly before them, and the jury instruction was proper.

### e. The Jury Did Not Consider Inadmissible Evidence

Finally, Roach and Clark argue that Court erred by failing to dismiss Walsh's civil conspiracy claim prior to trial, which they claim resulted in the jury hearing testimony that otherwise would have been inadmissible. Roach and Clark contend that absent a civil conspiracy claim, all testimony concerning their subjective motivations and their scheme to pressure Walsh into dropping the charges against Vadala would have been precluded. This argument fails. Testimony on these subjects was admissible regardless of the existence of a civil conspiracy claim, for it provided context for the circumstances surrounding Walsh's arrest and was relevant to the question of whether Roach and Clark acted in bad faith by arresting Walsh.

## CONCLUSION

For the reasons discussed in this opinion and order, Roach and Clark's post-trial motion pursuant to Rules 50(b) and 59(a), Fed. R. Civ. P, is denied. The Clerk shall terminate the motion (Dkt. No. 92). There are no other pending or open items before the district court in this docket.

SO ORDERED.

Dated: July 7, 2017
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge